HOPE IRON WORKS *vs.* OLIVER HOLDEN & another.

*Receipt—construction of.  Certificate—construction of.  Practice.*

A writing acknowledging that the subscriber had received the promissory note of another "for five shares of stock in the M. T. Co., and certificates of stock are to issue to" the maker of the note for the same, when ready for issue,—is not a contract for the future sale of the shares, but a recognition that the shares themselves were the consideration of the note.

A certificate that a certain person named "is the owner of five fortieth parts of the letters-patent and property of the M. T. Co.," ... and stipulating "that whenever an incorporated company shall be organized ... the holder hereof shall be entitled to receive its equivalent value in the certificate of shares in the capital stock of such company," does not operate as an assignment to the holder of any interest in the letters-patent.

The fact that the jury were unable to agree upon one of four questions submitted to them, cannot be presented to the full court upon a motion to set aside the verdict as being against the evidence.

ON EXCEPTIONS to the ruling of *Goddard,* J., of the superior court, and motion to set aside a verdict for the defendants, as being against the weight of evidence.

It appeared that one Manton, being the inventor of a lathe-tool, obtained letters-patent therefor; that in the latter part of 1867, after some correspondence and several personal interviews between Manton and the defendants, in which Manton said he had applied for a patent, and was about to organize a company for the manufacture of the tool, the defendants, on Jan. 14, 1868, were induced to give their note for $1283$\frac{33}{100}$, on four months, for five shares of the capital stock in said company, taking from Manton a paper signed by him, acknowledging that he "received of Oliver Holden & Co., their note, at four months from date, for twelve hundred eighty-three $\frac{33}{100}$ dollars, for five shares of stock in the Manton Tool Company, and certificates of stock are to be issued to said O. H. & Co., for five shares of said stock when ready for issue, when this receipt is to be given up;" that the defendants were anxious to receive the issue of stock, and so frequently expressed themselves in letters to Manton; that the note was made payable to the order of the plaintiffs, of which Manton was a member and agent.

Hope Iron Works *v.* Holden.

That at the January session of general assembly of the State of R. I. (in which Manton resided), Manton petitioned for a charter to incorporate the Machinists' Tool Company; that Manton sent the defendants a certificate of the following tenor:

"MACHINIST TOOL COMPANY. No. 2.

| U. S. I. R. |
| Stamp. |
| 25 cts. |

Know all men by these presents, that Oliver Holden & Co. is the owner of five fortieth parts of the letters-patent and property of the Machinist Tool Company, the same being divided into forty shares, of the par value of five hundred dollars each, and it is hereby agreed that whenever an incorporated company shall be organized for carrying on the business of the above mentioned company, the holders hereof shall be entitled, upon the surrender of this instrument, to receive its equivalent value in certificate of shares in the capital stock of such company. J. R. FIELD, *Secretary.*"

PROVIDENCE, R. I., March 2, 1868.

That the note matured, when, by way of renewal, two notes were given as before, making the same sum in the aggregate; that in the meantime, a charter had been obtained, in which Manton & Holden were mentioned as the original corporators; that it was never organized; that the plaintiffs discounted the notes and took them up at maturity as indorsers; that the defendants repeatedly agreed to pay them after they were given, but never did; that they never offered to return the latter certificate; that Holden never authorized his name used as corporator.

The presiding judge requested the jury to answer four questions, which he proposed to them in writing, as follows:

1. *Interrogatory.* Have the defendants, or either of them, received any consideration for the notes in suit?

*Answer.* They have not.

2. *Int.* If the jury find that defendants, or either of them, have not received any consideration for the notes in suit, have defendants, or either of them, waived or relinquished their right to receive the consideration of said note?

*Ans.* They have not.

Hope Iron Works v. Holden.

3. *Int.* If the jury find that defendants, or either of them, have received a consideration for the notes in suit, but different from that originally agreed upon, have defendants consented to accept such different consideration instead of the one originally agreed upon ?

*Ans.* They have not.

4. *Int.* If the jury finds that there was no consideration for the notes in suit, did the Hope Iron Works Company, plaintiffs in this suit, take the original note of January, A. D. 1868, of Manton, in the regular course of business, without knowledge of any want of consideration ?

. The jury did not answer this last question, but the foreman undertook to state they were unable to agree on this point, and how the jury stood upon it; but the court stated to the foreman that he did not consider it important for him to make any explanation, as the jury were not required to answer either of the questions.

The jury returned a verdict for the defendants, whereupon the plaintiffs alleged exceptions, and filed a motion that the verdict be set aside as being against the weight of evidence.

The remaining facts, so far as they are necessary to understand the law of the case, may be found in the opinion.

*J. D. & F. Fessenden,* for the plaintiffs.

1. Were the plaintiffs *bona fide* holders, for a valuable consideration, without notice ? Unless the contrary is shown, to the satisfaction of the jury, defendants are not entitled to a verdict. See special finding, No. 4.

2. As to the consideration.

This is not a question strictly of fact, but of the legal result of facts proved. Jury having drawn an erroneous conclusion from the facts, a new trial should be granted. Hilliard on New Trials, c. 8, 14.

Stock in a corporation in process of, but not having completed its organization, is a good consideration for a promissory note. *Vermont Central Railroad Co.* v. *Clayes*, 21 Verm. 30; *Goshen Turnpike Co.* v. *Hustin*, 9 Johns. 217.

Nor does the insolvency of the corporation constitute a defense.

Angell on Corporations, §§ 520, 523. *Sagory* v. *Dubois*, 3 Sandf. Chancery, 465.

Nor informality in the organization. Angell on Corporations, § 520.

The provisional certificate of March 2d, transferred property of value, a sufficient consideration for defendant's promise. It was what they bargained for. They accepted it as such with full knowledge of the circumstances, and subsequently renewed their promise to the plaintiffs to pay for it.

*A. A. Strout*, for the plaintiffs, contended,

1. That the promise of Manton, as evidenced by the receipt and letters, was a valid consideration for the original notes. *Saco Manufacturing Co.* v. *Whitney*, 7 Maine, 256; *Read* v. *Cummings*, 2 Maine, 82.

2. Promises in letters and renewals of notes clearly proved an acceptance of the certificate of March 2d, in lieu of the original arrangement about stock.

3. If the original note was without consideration, it would be sufficient consideration for a new promise, if made expressly and without condition. *Warren Academy* v. *Starrett*, 15 Maine, 445; *Amherst Academy* v. *Cowls*, 6 Pick. 427.

4. The conveyance of the patent-right, by Manton to the company, and the issuing of the certificate of March 2d, was a good consideration for the new promise.

5. The jury were unable to agree on the last point, which was essential to the verdict.

*L. D. M. Sweat*, for the defendants.

DANFORTH, J. The jury have decided that there was a failure of consideration for the notes in suit. Upon this point we see no reason to disturb the verdict. The defendants supposed they were purchasing shares in the capital stock of an incorporated company. Manton was selling shares in a company to be incorporated. Suppose the contract had been as Manton understood it, and suppose

shares in a company in process of organization to be a sufficient consideration for a promissory note, still the defendants never received such shares.   At the date of the original notes, even the charter had not been granted, and after it was granted no organization was ever completed or even begun.   The defendants never received the conveyance of any shares, nor were they put in any position to enjoy the rights of a preliminary subscriber.   They, as a consideration for their notes, obtained no shares in an incorporated company, nor any rights in one not incorporated.   The original agreement with Manton was not consummated by him, or by any one under him.

It is, however, said that the receipt of Jan. 14, 1868, is, of itself, a sufficient consideration for the notes.   But this is not a contract for the future sale of shares.   It is rather a recognition of one already made.   The fair construction of the paper is, that the shares themselves were the consideration of the notes, and not an agreement to sell or convey in the future.   This paper does not, in any degree, change the testimony or modify its effect as to the original agreement under which the notes were given, nor does it furnish any new consideration for them.

It may be conceded that an agreement or promise to do anything in the future is a sufficient consideration for a promissory note. But, as already seen, this is not such an agreement or promise.   It looks to a past transaction and not to a future, except as to the issuing of the certificate.   It contemplates the stock as already in existence and sold, the certificate, only, to be prepared.

But perhaps a more conclusive answer to this point is, that the jury have found that the defendants never accepted the receipt as a substitute for the stock, or made any promise in the notes, or otherwise, upon the strength of it.   And if the testimony does not place this beyond all doubt, it tends so strongly in that direction, that we cannot say the verdict was wrong.

It is further said that the paper of March 2, 1868, called a " provisional certificate," is a sufficient consideration for the promise of the defendants.   Whether this paper is of any value, may perhaps

be doubted. There is nothing in the case to show the authority of Mr. Field to issue such a certificate. It is quite evident that, if issued with the proper authority, it does not comply with the requirements of law for the assignment of the letters-patent, and would give the defendants no interest whatever in such patent.

But there is the same difficulty with this paper as with the other. The jury have said, and we think were justified in saying, that the defendants never accepted it as in any respect fulfilling the original agreement, or as claiming any right or interest under it. There is nothing in the case showing that the renewals of the original note were other than simple renewals under the original agreement, founded upon the original consideration, and not induced by any subsequent transactions. The same may be said of the subsequent promises to pay. They appear to have been made with the expectation of, and relying upon, the fulfillment of the original agreement, and not because of the receipt or "provisional certificate." They were, in fact, accompanied by a repudiation of these papers, a denial that they did fulfill the original undertaking, and constantly claiming a certificate of the stock.

The suggestion that the jury were unable to agree upon one point submitted to them, as vital to the verdict rendered, might, perhaps, be entitled to serious consideration, were that question properly before us. But the motion for a new trial is founded not upon any misconduct of the jury, or that they were unmindful of their duty in neglecting to settle one of the issues presented to them, but upon the ground that the verdict rendered is against the evidence. The verdict as it stands necessarily disposes of that point. It is a denial that the plaintiffs are holders for a valuable consideration and without notice. And the question presented by the motion is whether that denial is unsupported by the testimony. We think it is not only not unsupported, but that it is fully justified, and that if the jury had understood the fourth question as presented to them, they would have had no difficulty in coming to a conclusion. It may, perhaps, be somewhat doubtful from the testimony, whether the plaintiffs are holders for value. But if they are,

there can scarcely be a doubt as to their having had notice of the origin and subsequent history of the notes. Manton testifies that he was the agent and treasurer of the plaintiffs; that they "acted as bankers for the Machinist Tool Company, advancing the money and collecting the assessments." It further appears, from Manton's testimony, that the original note was made payable to plaintiffs, discounted upon their indorsement, and the money raised on the discount was used, not for their own benefit, but for that of the Machinist Tool Company. This, with other testimony showing the intimate connection of Manton and the two companies, and the knowledge of the plaintiffs of these notes, and the transaction out of which they grew, would seem to remove all difficulty as to notice.

The whole charge of the presiding judge is excepted to, but no particular ruling or instruction is pointed out as being erroneous, nor have we discovered anything in it objectionable.

*Motion and exceptions overruled.*

APPLETON, C. J.; KENT, WALTON, BARROWS, and TAPLEY, JJ., concurred.